The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. Upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some modifications regarding the payment of benefits during periods plaintiff was unable to work because of medical treatment. The Full Commission, in their discretion, has determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives.
 ***********
Attorney for plaintiff filed a motion with the Full Commission on 16 March 2000. This motion requested the Full Commission to receive 11 pages of medical notes generated since December 1999. Defendants have filed a response refusing to stipulate to the admission of these recent medical records. Plaintiffs motion is hereby DENIED.
 ***********
Accordingly, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers Compensation Act.
2. An employee-employer relationship existed between plaintiff-employee and defendant-employer.
3. St. Paul Fire Marine was the compensation carrier on the risk.
4. Plaintiffs applicable average weekly wage is $617.88.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. Plaintiff was born on May 13, 1960 and was 34 years of age on the date of the hearing before the Deputy Commissioner. He graduated from high school and has one and a half years of community college education. His work experience has been primarily in heavy construction. He began working in construction at age 19 and has experience as a supervisor.
2. Plaintiff previously worked for a construction company involved in building office buildings, including high-rise buildings. In the ten years preceding his employment with defendant-employer, plaintiff worked for three different employers. Plaintiff began working for defendant, a commercial construction company, in March 1991 as a carpentry superintendent.
3. On or about December 18, 1992, plaintiff sustained an admittedly compensable injury by accident while working for defendant. Plaintiff was helping to remove concrete forms from a three and one-half story structure at UNC-Greensboro. One of the forms struck plaintiff on the left side of his head and knocked him down. Plaintiff continued to work subsequent to the accident.
4. Following the accident, plaintiff was evaluated by and came under the care of Dr. T. K. Wantanabe, an otolaryngologist with Cary ENT Clinic. CT scans of the temporal bone showed no evidence of fracture. Dr. Watanabe noted some possible granulation tissue in the left ear and suspected possible post-traumatic Menieres disease. This disease diagnosis cannot be confirmed objectively, but could be explored surgically. Dr. Watanabe suggested surgery as a possibility.
5. Plaintiff was also evaluated at Duke Medical Center, where he had hearing loss evaluations, sleep studies, and psychiatric evaluation. After the accident, plaintiff moved to Fredericksburg, Virginia, where he was assessed and treated by Dr. Richard Linde, an otolaryngologist.
6. Due to his compensable accident, plaintiff sustained injury to his left ear that resulted in a loss of hearing, primarily in the low-pitched frequencies in the left ear. Plaintiff also has bilateral loss of hearing in the high frequency range, which may have preceded the accident, but which was most likely aggravated by the blow to plaintiffs head. Plaintiff has been fitted with a hearing aid.
7. The blow to plaintiffs head also caused tinnitus, or ringing, in his left ear. Dr. Linde recommended that plaintiff follow-up with treatment through the Tinnitus Treatment Center at the University of Maryland. Dr. Wantanabe also strongly recommended this program as world-renowned. However, plaintiff did not seem interested and has not scheduled an appointment at the center.
8. Plaintiffs injury also caused vertigo. Plaintiff suffers from mild balance problems and intermittent dizziness. Due to his dizziness, and as recommended by Dr. Linde, plaintiff should not be working in jobs that require climbing on ladders or working at heights.
9. In 1995, at the direction of the Commission, plaintiff had a neuro-psychiatric evaluation by Dr. Barry Hurwitz at Duke. Plaintiff reported for evaluation by Dr. Hurwitz on May 3, 1995. Plaintiff then underwent various tests, including an MRI brain scan, a sleep test, as well as WAIS and MMPI evaluations. The sleep study could not be completed because plaintiff did not sleep adequately.
10. Dr. Hurwitz reviewed the test results as well as the records plaintiff took with him. Testing revealed a normal-range IQ. Dr. Hurwitz found no organic or psychiatric features to suggest that plaintiff suffered a closed head injury. Dr. Hurwitz did find plaintiff had hearing loss and a significant sleep disturbance that warranted further study. He was not sure if the sleep problems were due to a disturbance or sleep apnea due to obesity.
11. Plaintiff has some ongoing balance problems, hearing loss, and tinnitus. The balance difficulties and plaintiffs occasional vertigo have interfered with plaintiffs pursuit of employment that would require him to work at great heights. However, these conditions have not adversely impacted plaintiffs wage-earning capacity. The opinion expressed by Dr. Linde that plaintiff is disabled from employment is not supported by the greater weight of the evidence.
12. During the periods at issue, plaintiff has worked almost continuously. He has been able to earn wages as a construction supervisor for other employers at the same or greater wages than those he earned in defendants employment.
13. After the accident, plaintiff continued working for defendant at the UNC-Greensboro project for about six months. He later resigned and began working for Donahoe Construction. However, he left that position after only a few weeks due to disagreements with management. Around July 1993, plaintiff began working for Sal Construction in Cary, North Carolina. He continued in that employment until April 1994, when he began working on a project in Greensboro for Weaver Construction. He remained in that employment until about June 1994 when he quit and moved to Virginia.
14. In August 1994 plaintiff began working for Merritt-Meridian Construction Company as a supervisor of construction of a one-story sports complex. He had an annual salary of $45,000, plus use of a company vehicle and reimbursement for gasoline. At the time of the hearing before the deputy commissioner, plaintiff was still working as a general construction superintendent for Merritt Meridian. He continued in this employment until October 1995.
15. From October 1995 to December 1996, plaintiff worked as a construction supervisor for L. White and Company. He supervised construction of a one-story manufacturing facility. Plaintiffs annual salary was $35,000 and he was provided a company vehicle and gasoline reimbursement.
16. In January 1997, plaintiff began working for Sweet Associates, Inc., supervising construction of a five-story building. His annual salary was $52,000, with a company vehicle and gasoline reimbursement provided. Plaintiff continued in that employment until February 1998.
17. In February 1998, plaintiff began working for MLB Industries as a construction supervisor on a one-story manufacturing facility. His annual salary was $55,000, with a company vehicle and gasoline reimbursement provided. Plaintiff was still working for MLB Industries as of May 1998, when he provided information in response to defendants interrogatories.
18. Since leaving defendant-employer, plaintiff has been employed almost continuously as a construction superintendent. Plaintiffs injuries have not prevented him from returning to his prior occupation in construction. Plaintiff has not suffered any diminution in his wage-earning capacity due to his injury by accident.
19. Pursuant to plaintiffs motion and the order of the Deputy Commissioner filed March 3, 1997, defendants paid plaintiff benefits for total disability from January 13, 1997 through July 6, 1998. Because plaintiff was earning wages in competitive, gainful employment during this period, these payments were not due under the Act.
20. As a result of the compensable injury, plaintiff may be in need of ongoing medical treatment for his hearing loss, balance, and tinnitus in the form of a tinnitus treatment program such as the one at the University of Maryland recommended to plaintiff by the medical providers. This medical treatment may also include medication, periodic evaluations, if necessary, and the hearing aid devices recommended by Dr. Linde.
21. Plaintiff has not sustained a closed head injury and does not suffer any ongoing mental impairment due to his accident.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As a result of his injury by accident of December 18, 1992, plaintiff has suffered permanent injury to his left ear that has resulted in hearing loss, tinnitus, and mild balance problems. Defendants are responsible for providing such ongoing medical treatment as may be reasonably necessary to address these conditions. This includes a tinnitus treatment program such as the one offered at the University of Maryland, should plaintiff request and submit to such treatment. Defendants are obligated to provide ongoing treatment and are authorized to select appropriate medical care providers in the geographical area where plaintiff resides. The medical treatment also includes provision of the hearing aid devices recommended by Dr. Linde. N.C. Gen. Stat.97-2(19), 97-25.
2. Although plaintiff has sustained permanent damage to his left ear, this injury has not resulted in any diminution of plaintiffs wage-earning capacity. The greater weight of the evidence fails to establish that plaintiff is incapable of earning wages in any employment. N.C. Gen. Stat. 97-29; Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982).
3. Defendants overpaid plaintiff compensation benefits for total disability from January 13, 1997 through July 6, 1998. Defendants are entitled to a credit for all amounts paid to plaintiff as total disability compensation during this period. This credit would apply to any future period of disability caused by medical treatment related to the compensable injury. N.C. Gen. Stat.97-42.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall continue to pay all medical expenses that may be incurred for treatment rendered to plaintiff that is reasonably necessary due to the permanent injuries sustained from his compensable December 18, 1992 accident. The approved medical treatment includes, but is not limited to, treatment at the University of Maryland and the hearing aid devices recommended by Dr. Linde.
2. Plaintiffs claim for additional or ongoing total disability compensation benefits is DENIED.
This is the ___ day of August, 2000.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/______________ RENE C. RIGGSBEE COMMISSIONER
S/_______________ CHRISTOPHER SCOTT COMMISSIONER